United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NICAISE DOGBO,

        Plaintiff,

  v.

VERIZON WIRELESS, LLC,

        Defendant.

_____/

No. C 15-04418 JSW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendant Verizon Wireless, LLC ("Defendant"). The Court finds the motion suitable for disposition without oral argument and therefore VACATES the hearing set for March 24, 2017. *See* N.D. Civ. L.R. 7-1(b). Having considered the parties' papers, the relevant legal authority, and good cause appearing, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff Nicaise Dogbo has a disability which renders him completely blind. Despite his disability, Plaintiff has earned a degree in Electrical Engineering and has over fifteen years of experience working with website accessibility issues at many different companies. (*See* Complaint at ¶ 8.) On December 5, 2014, Plaintiff applied online for a Web Accessibility SME/QA Analyst position offered by Defendant, which was posted by Defendant Randstad Technologies, LP, a professional staffing agency.[1]

Plaintiff interviewed by telephone for the position. (*Id.* at ¶ 11.) Thereafter, Plaintiff completed an online Accessibility Sample Test, during which, as instructed, he evaluated the content

_____

[1]    Defendant Randstad has been dismissed pursuant to stipulation of the parties.

**United States District Court**
For the Northern District of California

1   of the page's accessibility based on customer experience via a screen reader and found a minimum

2   of three issues. (*Id.* at ¶ 12.)  After explaining why he may have missed several items on the test, but

3   without disclosing his disability, Plaintiff was eventually hired for the position. (*Id.* at ¶¶ 14-19.)

4         Before beginning work, Plaintiff notified Defendant that he was visually impaired and would

5   require a screen reader to be installed at his work station. (*Id.* at ¶ 22.)  On February 9, 2015,

6   Plaintiff reported for work and, after being escorted to his work station, was left at his desk for the

7   rest of the day without work or further instructions. (*Id.* at ¶¶ 23-24.)  Thereafter, Plaintiff was told

8   that the work order for his screen reader had not yet been created and was asked not to return to

9   work until further notice. (*Id.* at ¶ 25.)  On March 10, 2015, after a month without indication from

10  Defendant about whether Plaintiff would return to work, Plaintiff was terminated and told that he

11  was unable to fulfill the requirements of the position because of his physical disability. (*Id.* at ¶ 27.)

12        On August 24, 2015, Plaintiff filed a complaint before the Superior Court of the County of

13  Contra Costa for retaliation in violation of the California Fair Employment and Housing Act

14  ("FEHA"), disability discrimination in violation of FEHA, failure to accommodate and engage in

15  interactive process in violation of FEHA, intentional infliction of emotional distress, and wrongful

16  termination in violation of public policy.  On September 25, 2015, Defendants removed the action to

17  this Court pursuant to diversity jurisdiction.  On February 10, 2017, Defendant moved for summary

18  judgment on the claims.

19        The Court shall refer to additional, specific facts as necessary in the remainder of this Order.

20  **ANALYSIS**

21  **A.**   **Legal Standard for Motion for Summary Judgment.**

22        A principal purpose of the summary judgment procedure is to identify and dispose of

23  factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  Summary

24  judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on

25  file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

26  and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In

27  considering a motion for summary judgment, the court may not weigh the evidence or make

28

credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(e)(3).

**B.      Discrimination Claim for Relief.**

In order to prevail on a discriminatory discharge claim under FEHA section 12940(a), an employee bears the burden to demonstrate the following: (1) that he was discharged because of a disability and (2) that he could perform the essential functions of the job with or without accommodation, or in the parlance of the ADA, that he is a qualified individual with a disability. *See Lui v. City and County of San Francisco*, 211 Cal. App. 4th 962, 970-71 (2013). A qualified individual "can perform the essential functions of the job with or without reasonable accommodation." *Id.* at 972.

The determination of the essential functions of a job is an intensely fact-specific inquiry. *See Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). "A job function may be considered essential for any of several reasons, including the reason that the position is exists is to

3

perform that function, or because of the limited number of employees available among whom the performance of that job function can be distributed, or the function may be highly specialized, so that it is incumbent upon the individual hired in that position for his expertise to perform that particular function." *See Lui*, 211 Cal. App. 4th at 971-72.  Evidence of a whether a particular function is essential can be ascertained by, among other things, the employer's judgment as to which functions are essential, written job descriptions prepared before advertising or interviewing applicants for the job, the amount of time dedicated to that function while on the job, the consequences of not requiring the employee to perform the function, the work experiences of past incumbents in the job, and the current work experience of incumbents in similar jobs.  *See id.*; *see also* Cal. Gov't Code § 12926(f)(2)(A)-(G).

A reasonable accommodation is defined as "a modification or adjustment to the workplace that enables the employee to perform the essential function of the job held or desired." *Lui*, 211 Cal. App. 4th at 971.  Reasonable accommodations may include such things as job restructuring or permitting an alteration of when or how an essential function is performed.  *See Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 374 (2015).  The reasonableness of an accommodation is generally a question of fact.  *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 228 n.11 (1999).

Given the current record before the Court, including the most recent production of the training handbook, the Court finds that both parties agree that Plaintiff was skilled in the area and had many qualifications, training, and attributes necessary to fill the position.  However, the parties and experts also agree that there were tasks inherent in the position that only a sighted person could accomplish.  The undisputed facts reveal – and Plaintiff and his expert agree – that Plaintiff would have been qualified to perform the functions of the job with the aid of "visual assistance of a fellow employee, preferably (but not exclusively) a member of his project and/or engineering team."  (*See, e.g.*, Mike Paciello Declaration, Ex. A at 3, 9, 13; *see also* Declaration of Gabrielle M. Wirth, Ex. A (Dogbo deposition) at 124:12-15, 136:35, 20-24, 139:16-21, 145:7-10, 146:7-17, 153:1-20, 264:22-265:17.)

United States District Court

For the Northern District of California

1   However, what is still disputed in the record before the Court is whether the functions which

2   required the visual assistance of a fellow employee qualify as essential functions and whether, if

3   they do, the suggested accommodation of a sighted fellow employee would be a reasonable

4   accommodation.  Plaintiff repeatedly testified during his deposition that the functions requiring

5   visual assistance were minor and infrequent.  The suggestion that a sighted person could be part of a

6   larger group working on any given project may or may not be reasonable under the particular

7   circumstances of the working environment.  Although Defendant is a large employer with large

8   groups assigned to many projects, it is unclear from the record whether there would otherwise have

9   been employees accessible to Plaintiff in his workplace that could have stepped in when the aid of a

10  sighted person was required.  It is furthermore unclear whether the job description which does in fact

11  require interaction and communication with teams of other employees would lead an applicant to

12  believe that other, sighted employees would be accessible to Plaintiff during those instances in

13  which visual validation was required.  Accordingly, because there remain disputed issues of fact

14  about the essential nature of the functions and the reasonableness of the suggested accommodation,

15  the Court finds that Defendant has not met its burden to demonstrate that it is entitled to judgment as

16  a matter of law.  Accordingly, Defendant's motion for summary judgment on Plaintiff's second

17  claim for relief for disability discrimination under FEHA is DENIED.  Because the Court finds this

18  claim for relief viable, the Court further finds Plaintiff's third claim for failure to accommodate and

19  engage in an interactive process remains viable.  The motion for summary judgment as to the third

20  claim for relief is also therefore DENIED.[2]

21  **C.      Remaining Causes of Action.**

22  Plaintiff also alleges a claim for relief under FEHA for retaliation.  To maintain a claim for

23  retaliation, Plaintiff must have engaged in a protected activity and faced termination as a result.  *See*

24  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).  Here, Plaintiff alludes to his request

25  for the accommodation of screen reading software to assist him as the subject protected activity.

26  (Complaint at ¶ 31.)  However, there is no evidence at all in the record indicating that Defendant

27

28      [2]    The Court similarly DENIES summary judgment as to Plaintiff's fifth claim for wrongful
        termination in violation of public policy, premised upon the disputed facts supporting the discrimination
        (and not the retaliation) claim for relief.

United States District Court

For the Northern District of California

1  may have terminated Plaintiff because of this request, especially considering that all parties agree

2  the requested software would have been a necessary tool to be used in the position at issue.

3  Accordingly, Defendant's motion for summary adjudication of the first claim for relief for retaliation

4  is GRANTED.

5      Plaintiff's fourth claim for relief for intentional infliction of emotional distress fails as a

6  matter of law because Plaintiff fails to allege or establish facts constituting severe or outrageous

7  conduct.  In order to maintain a claim for intentional infliction of emotional distress, a plaintiff must

8  establish the following elements: (1) extreme and outrageous conduct by defendant; (2) with the

9  intent to cause emotional distress; (3) that plaintiff in fact suffered severe or extreme emotional

10  distress; and (4) which was proximately caused by defendant's outrageous conduct.  *See Cole v. Fair*

11  *Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155-56 n.7 (1987).  This tort imposes liability for

12  "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially

13  calculated to cause, and does cause, mental distress."  *Id.*  Outrageous conduct is conduct that is "so

14  extreme as to exceed all bounds of that usually tolerated in a civilized community . . . and so

15  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

16  and utterly intolerable in a civilized community."  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496

17  (1998); *see also Christensen v. Superior Court of California*, 54 Cal. 3d 868, 903 (1991).  Behavior

18  may be considered outrageous if a defendant "(1) abuses a relation or position which gives him

19  power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through

20  mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely

21  to result in illness through mental distress."  *Cole*, 43 Cal. 3d at 155 n.7 (citations omitted).

22      "Managing personnel is not outrageous conduct beyond the bounds of human decency."  *See*

23  *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  "A simple pleading of personnel

24  management activity is insufficient to support a claim of intentional infliction of emotional distress,

25  even if improper motivation is alleged.  If personnel management decisions are improperly

26  motivated, the remedy is a suit against the employer for discrimination."  *Id.*  Similarly, in general

27  "an employee can have no tort recovery for emotional distress resulting from his employment.  The

28  emotional distress which stems from an employer's unfavorable supervisory decisions . . . is a

1   normal part of the employment relationship, even when the distress results from an employer's

2   conduct that is intentional, unfair, or outrageous." *Philips v. Gemini Moving Specialists*, 63 Cal.

3   App. 4th 563, 577 (1998).

4        Here, the facts as alleged by Plaintiff in this matter simply do not rise to the level of extreme

5   and outrageous conduct required to state a claim for intentional infliction of emotional distress.

6   Plaintiff's contentions about personnel management decisions should properly be addressed in his

7   claims for discrimination.  Accordingly, the Court GRANTS Defendant's motion for summary

8   judgment as to Plaintiff's fourth claim for relief for intentional infliction of emotional distress.

9                                **CONCLUSION**

10        For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

11  Defendant's motion for summary judgment.  The Court DENIES the motion as to the second, third,

12  and fifth causes of action and GRANTS the motion as to the first and fourth causes of action.

13        The Court is not available at the time of the date set for trial in this matter and the dates set

14  for the pretrial conference and trial dates are HEREBY VACATED and shall be reset by further

15  order of the Court.  At this juncture, the Court believes it would benefit the parties to participate in

16  an alternative dispute resolution proceeding.  Accordingly, the Court hereby REFERS this case to

17  the Court's ADR unit for a further ADR telephone conference and recommendation, to take place at

18  the ADR unit's earliest available time.  The Court HEREBY SETS a further case management

19  conference for July 21, 2017 at 11:00 a.m. with the parties' joint submission of a proposed trial

20  schedule due to be filed no later than July 14, 2017.

21        **IT IS SO ORDERED.**

22  Dated:   March 27, 2017

23                                                JEFFREY S. WHITE
                                                 UNITED STATES DISTRICT JUDGE

24

25

26

27

28